# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| MATEEM HUDSON, | ) |
|     Plaintiff, | ) |
| VS. | )    No. 19-1069-JDT-cgc |
| CORECIVIC, ET AL., | ) |
|     Defendants. | ) |

## ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT FISH

On April 4, 2019, Plaintiff Mateem Hudson, who is incarcerated at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint addresses events that allegedly occurred while Hudson was incarcerated at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee. (ECF No. 1 at PageID 3.) The Court issued an order on April 9, 2019, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as CoreCivic, WCF Internal Affairs Coordinator Ellery Grier, and WCF Officer Amy Fish.

In his complaint and its attachments, Hudson alleges that on June 21, 2018, Officer Fish allowed into his housing pod two gang members who resided in an adjacent housing pod. (ECF No. 1 at PageID 4.) Hudson had earlier seen Fish allegedly fraternizing with the gang members, who are members of the Vice Lords gang, and she allegedly facilitated their attack on Hudson.

(ECF No. 1-1 at PageID 9.) He alleges that Fish knew the gang members did not live in Hudson's housing pod but allowed them in to attack Hudson for writing complaints against two other corrections officers. (*Id.*) The gang members entered Hudson's cell and attacked him, causing injuries that required hospitalization. (ECF No. 1 at PageID 4.) During the attack, the gang members allegedly asked Hudson why he wrote the complaints against the two officers. (ECF No. 1-1 at PageID 9.) Neither gang member was disciplined for the attack. (ECF No. 1 at PageID 4.)

Once returned to WCF, Hudson was placed in protective custody and restrictive housing but was "denied the same rights afforded to all inmates in general population." (*Id.*) Hudson wrote a grievance alleging violations of his Eighth Amendment rights but received no response. (*Id.*) He alleges that his commissary trust account also was "put on block by Internal Affairs," even though he had not received a disciplinary infraction. (*Id.* at PageID 5.)

Hudson seeks compensatory damages. (*Id.*) He also wants to pursue criminal charges against Fish and wants Grier fired for not investigating the assault. (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-

pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Hudson filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Hudson does not state a claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against CoreCivic, a plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Hudson, however, has not alleged that a policy or custom of CoreCivic was the "moving force" behind the alleged violation of his constitutional rights.

Hudson's allegation that Officer Fish allowed inmates into his cell to attack him amounts to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's

necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38. In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

Hudson's allegations against Officer Fish satisfy both components of an Eighth Amendment claim. He alleges that Officer Fish facilitated the entry into his housing pod and attack by two gang members who lived in a different pod, and as a result Hudson was hospitalized for treatment of his injuries. Being incarcerated in a facility with an officer who arranged for his attack unquestionably demonstrates that Hudson faced conditions posing a substantial risk of serious harm. Hudson also sufficiently alleges that Fish was sufficiently culpable for the attack. He alleges that Fish facilitated the attack in retaliation for Hudson submitting complaints against two other officers. The gang members asked Hudson during the attack why he had submitted the complaints, bolstering Hudson's allegations. Hudson alleges that he has no history with the inmates, so there is no reason they would spontaneously attack him. Hudson's allegations suggest that Fish not only should have been aware of the reasonable likelihood of a potential attack, she

5

was aware and had incited it. Taking Hudson's allegations as true, he has stated an Eighth Amendment claim against Officer Fish.

Hudson, however, does not state a claim against Grier. Prisoners have a First Amendment right to file a grievance against prison officials, but they have no similar constitutional right to an investigation of their allegations. *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed properly to investigate his grievances because there is no "federally protected liberty interest" in a certain resolution or investigation of grievances). Nor does Hudson have a constitutional right to an investigation of his assault. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). He therefore cannot state a claim against Grier for not investigating his grievances or the assault.

To the extent Hudson claims the grievance process was inadequate, he fails to state a valid claim under § 1983. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

Because Hudson is no longer at the WCF, however, his request for injunctive relief is moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (complaint for declaratory or injunctive relief is rendered moot by the plaintiff's transfer to a different prison facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Moreover, Hudson cannot compel a prosecution against Fish for her alleged acts. *See Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308-09 (6th

Cir. 2004) (citing *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986)).  The decision whether to institute state or federal criminal proceedings is committed wholly to the discretion of the State District Attorney or the United States Attorney. This Court has no authority to order that Fish be charged with a crime.  Hudson's claim against Fish will therefore proceed for damages only.

In conclusion, Hudson's claims against Core Civic and Grier are DISMISSED for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Hudson's Eighth Amendment claim against Defendant Fish shall proceed.

It is ORDERED that the Clerk shall issue process for Defendant Amy Fish and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Fish pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective.  All costs of service shall by advanced by the United States.

It is further ORDERED that Hudson shall serve a copy of every subsequent document he files in this case on the attorneys for Defendant Fish or on Defendant Fish personally if she is unrepresented.  Hudson shall make a certificate of service on every document he files.  Hudson shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[1]

Hudson is reminded that he must promptly notify the Clerk of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.                                       s/ **James D. Todd**
                                                                     JAMES D. TODD
                                                                     UNITED STATES DISTRICT JUDGE

---

[1] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.